Well, good afternoon. Thank all of the attorneys for being willing to appear on such notice, such short notice. The way we've set it up is that we will have three of you go first, 10 minutes each, and you should feel free to reserve a bundle of time out of that 10 minutes. And then we'll have the plaintiff at the lease. They've got 30 minutes to respond. Ms. Desai, is that how I pronounce your last name? Yes, your honor. Representing Secretary of State Hobbs, you have 10 minutes. Thank you. You're welcome. Rufali Desai from the law firm of Copper Smith Brockelman, on behalf of the Secretary of State, may it please the court. The secretary's primary interest is to make sure that every vote in Arizona counts. Consistent with that interest, the secretary requests that courts enter a prospective stay of the district court's order, including a reasonable notice period, because it will ensure that elections administrators are able to manage the workload they had planned, rather than processing new voter registration applications that are coming in daily, and having to develop new strategies for integrating the new extended registration deadline into other existing statutory deadlines that have been set by Arizona's legislature and the elections procedure manual. The factors that this court considers when faced with a request for a stay pending appeal, support a stay in this case. The first factor is whether the stay applicant has made a strong showing that she is likely to succeed on the merit. The secretary need not reach plaintiff's constitutional claims to establish that she is likely to succeed on the merit. That is because plaintiff's claims suffer from several threshold procedural effects. Namely, plaintiffs failed to name indispensable parties. The county recorders in Arizona are independent elected officials, primarily responsible for voter registration. Did you say- In general manner, and we've been so many reports now, have the individual county name individually? I thought that the secretary of state was essentially the representative because she is the state official who governs elections. And my impression is that in most of these cases, she has been a defendant, not each of the county courts. Your honor, the county recorders have not been named as parties in this lawsuit. And- I'm not familiar with the names of the parties in the other lawsuits that have gone forward. Your honor, it is our position, and contrary to the district court's statements, that the secretary promulgates the voter registration rules and therefore- You know whether they've been named in, for example, the case that was decided last week or the other cases in Arizona, the DNC case, for example, where they, that's in the Supreme Court now, are they defendants in that case? Your honor, they are named in some cases and they are not named in others. And in the cases, for example, this court is hearing oral argument tomorrow in another case that's been filed, again, by some members of the Navajo Nation against the secretary of state. And it is an argument that is being made in that case as well, which is the county administrators that are responsible for actually doing the work and have to divert resources and time and appoint staff to do this work are the ones that need to be the subject of the court order. Can you go on to some other issues? The secretary, while in communication with the county recorders, and in fact, much of the information that we have relayed to the court in our statement as of yesterday comes from the county recorders. However, there is a delicate process that occurs with respect to voter registration. Some of those voter registrations come in through the secretary's office and then are sent to the counties for processing and inclusion on the voter rolls. Other times, the county recorders receive the registrations directly and process them. Judge Logan commented in his opinion that the defendant, who at that point was the secretary of state, really didn't bring forward any information about what problems there would be. And I think maybe the only one he mentioned that was mentioned was the date of the early ballots, which he said, therefore, he moved the date back from the 29th to the 23rd. But he seemed to think that nothing was before him with regard to difficulty. Is that wrong? The information that you've given us is not in the form of a declaration. And he didn't think he had any information. Is that incorrect? Your Honor, it is incorrect. There was information presented to Judge Logan, both in the written submission that the secretary of state made to the district court, as well as an oral argument. And at the record at 16, which is the motion that was filed by the secretary of state, there are detailed descriptions of some of the other election laws in Arizona that create significant complications when the voter registration deadline is extended without also changing those dates. And we identify, we provide more meat to the bones in our statement of yesterday evening, but the submission from the secretary of state at the district court also discussed those statutes. For example, the counties are authorized to begin tabulating ballots as of October 20th. That is 14 days before the election. The staff that is otherwise hired and trained to do the tabulation are now having to redirect and divert their attention from other elections administration duties to registering new voters. Another example that we provided in our papers and that we outlined yesterday in our statement has to do with the report that the secretary receives from the counties. So on October 17th, by statute- Ms. Desai, can I interrupt for just a moment? Yeah. Assuming for the moment that this panel does grant the stay on grounds that seem to be insufficient, you, your client has suggested that it'd be a prospective stay and indeed that the prospective stay starts several days after the effective date of our order. Now in the Endino case recently decided by the Supreme Court, the court gave two days, but that was a case in which these, the ballots were being mailed in. And this was essentially two days to allow receipt of the ballots. I don't understand why a prospective, if it is prospective, shouldn't start on the date of our order. Your Honor, the reason that the secretary, that there are two requests that we made in our statement as of yesterday. One is for a prospective stay. And what we mean by prospective stay is that it doesn't reverse any registrations that have been, have come in to the secretary of state or the counties post October 5th. Then I think what you're talking about, Your Honor, is a grace period. So a notice period, whereby Arizona- What's your client is talking about? You're right. What we're talking about are both of those things and they're distinct concepts. The concept of a prospective stay means that we are not seeking an undoing or an unwinding of Judge Logan's order with respect to registrations that have been filed post October 5th. The second part of what we're requesting is a grace period. With regard to the first, is that in part an equity reason and also in part that it would be very complicated to do that? Yes, Your Honor. I mean, I think that it is both, but from the secretary's perspective, once a voter has gone through the process of registering to vote under, at the time, what was a valid court order, we do not believe that it would be fair or appropriate to undo that voter's registration because at the time they registered, there was a standing court order that indicated- Counsel, how do you get around Arizona revised statute 16-120? That is titled eligibility to vote. And it's very clear, an elector shall not vote if they have not registered before midnight on the 29th day. So how do you then allow people to vote in the election when the Arizona law flatly prohibits it? Well, Your Honor, I think this is precisely some of the issues that we raise. There are other complex election laws that tie into the voter registration deadline. There is a residency requirement that you must be registered in Arizona for 29 days. And our view is that whenever you register to vote, whether that's before the 29th day or after the 29th day, as it were under this district court order, you still have to be eligible. So if there is a determination, when you fill out the form as a prospective voter in Arizona, you have to indicate in a vow that you have in fact met all of the eligibility requirements. That's the residency in Arizona requirement. But this says that even if you're an otherwise qualified voter, you may not vote, you shall not vote if you registered after midnight on the 29th day. That means that you are not eligible for the next election. You're eligible for all future elections. So how does the secretary not enforce that? And let me ask this as an ancillary question while you're thinking about that one. Can you distinguish, can you identify who is registered after the October 5th deadline is over? Well, Your Honor, and I think this goes to Judge Berzon's point, which is that there is a fairness and equity issue, but there is also a procedural and logistical issue with identifying people who in fact registered to vote after the October 5th deadline under and reliant to the district court's order. I can't answer your question with respect to whether every county has the function to determine who was registered post October 5th. There is, in my view, when a registration comes in online or through a paper form, that there is documentation that follows that. So is it possible? Is it conceivable to identify every individual who registered to vote after October 5th? The answer is yes. Is it administratively possible? Is there staffing and time and resources for the counties to go through that process at this time? I would believe the answer to that is no, because in fact, they're having difficulty even processing registration. Let's go back now to the registration requirements. I understand that the Secretary of State on the registration forms does not ask if you have been a resident of Arizona for 29 days or 30 days. Is that correct? It's not asked on the form. Correct, Your Honor. You are asked whether or not you meet the eligibility requirements to register to vote. Okay. So how does, and if you registered by midnight on the 5th, you have other means of, because you've requested identification of knowing that therefore they are qualified, otherwise qualified to vote. So how do you determine from the thousands of people who have registered since October 5th, if any of those people, in fact, are not qualified electors for the next election? Well, Your Honor, it's the same question that anyone could ask about any registration that came in to the Secretary of State or a county official. The reality is the form is the same. The online registration is the same. And so if you or I or anyone else in Arizona thought to register to vote prior to the 29th day, you would still have to make the avowal that you're eligible, for example, that you don't have a felony or had your civil rights restored. But if we're talking about the residency requirement, at least if you registered by midnight on October 5th, you must have been physically present in the state. You've at least said, I've got it. I have an address. I've got a driver's license of whatever it is that Arizona is going to require. But if you're registering on October 6th, how does the state verify that if it's not asking whether you've been a resident for 29 days? Right, well, with all due respect, Your Honor, I think that a person can fill out that form regardless of whether, and I don't think it happens. I think that what we're talking about here is somebody is identifying and avowing to all of the eligibility requirements, whether that happens on October 4th or October 7th. To be more specific, does the format, whether you're a felon, a disenfranchised felon specifically, or does it just ask whether you qualify to vote? The form outlines the eligibility requirements and then requests the registering voter to indicate that they meet all of the- It doesn't go one by one, and there's no way to check them. It doesn't go one by one. Correct. It's one by one to them. But I noticed, actually, that in your submission last night, and given the fact of the speed in which you had to do it, maybe this is why, you actually did not rely on it. That's the one thing you did not rely on was the residency issue. Maybe this is why, but you didn't. Your Honor, we don't rely on the residency requirement like, for example, the RNC committees, I think, spent a lot of time talking about that. From our perspective, we, when we have a voter registration eligibility criteria, that is true for people to meet regardless of when they register. If they register to vote without having met those eligibility criteria, whether it is having registered in August or registering in late October, the same relief would be available. If it were determined that that person wasn't an eligible voter, then they would have to deal with the other laws that we have on the books in Arizona to make sure that there is not fraudulent voting. Yes, theoretically, they can register in August and move away in November. That's correct. There are other laws that deter voters or individuals from registering and voting illegally. And so this is not, in our view, extending the registration deadline is far more problematic and causes irreparable harm for the reasons that are laid out in Purcell than, for example, because it opens the door or creates opportunity for fraud. That is not what we believe is the risk of extending the voter registration deadline. And as we lay out in our papers, the real problem here is the harm to the overall orderly administration of elections to allowing these election administrators- Let me just add, I think we're familiar with that part. We've taken you well over your time. We will give you a chance to respond, however, but at this time, you're well over, so we'll move on to the next attorney. Thank you very much for your- Thank you. We will next hear from, I think, if I'm pronouncing it correctly, Mr. Langhofer, representing the Republican National Committee. Thank you, Your Honors. May it please the Court, I'm Corey Langhofer, and together with my colleague, Tom Basile, I represent the Republican Committee. I would like to, in a moment, speak to the likelihood of successful merits, but before doing that, I want to just chime in on two of the questions that Judges Berzon and Bybee asked a moment ago. The first was, by Judge Berzon, about whether the counties are customarily named as defendants, and the answer to that is they very frequently are. In fact, the case that was just stated last week in this Court, DNC versus Hobbs, involved the counties named as defendants. And- What function does this have? It doesn't seem to have any function. Well- That the Secretary of State is statewide in charge of the system. She's perfectly capable of overseeing what's happening at the various places. She gave us some fairly specific information in that regard, and it doesn't seem to have complete formality. Well, Your Honor, you won't be surprised to hear that this is an issue that has come up before in Arizona. Well, let me ask you this. Has it come up in the District Court? Did anyone make a Rule 19 motion in the District Court? In this case- Yes. In the response to the P.I. briefs, both our clients and the Secretary of State said that the case should be dismissed because necessary parties were not showing up. So the motion was made, okay. Correct. Well, it seems to me that they might have some more problems had the Secretary of State remained in her original position and not appealing. But she did appeal, though, now. So I just don't feel a difference. Well, the county's perspective on this, of course, you can see in the briefs, but I'll summarize- You're not representing the county. You're representing the RNC, so maybe you should do that. Yes, Your Honor. I think there's a point here that is worth my client's time in making, so if you don't mind. The county recorders  and while the Secretary has some authority over them, there's a statute that entitles the Secretary to write an elections procedures manual with input from the governor and the Attorney General. There's a particular process for doing that. Through that channel, the Secretary does have some authority over the way elections are run. But in our view, the Secretary does not have authority to, outside of that elections procedure manual, direct the county recorders in how to perform their tasks. That's why they believe and we believe they're necessary parties here. The second question I wanted to chime in on previously from Judge Bybee was, what do we do about this residency requirement? As it stands, there will be no evidence in the public record of whether these voters who've registered- Is there any evidence in the public record of whether the person's a felon? Well, theoretically- On the record requirements? The evidence that is customarily in the public record is the voter's avowal under penalty of perjury on the voter registrations. The problem here is that the form does not speak to residency 29 days before the election. If the voter- Is that listed as one of the requirements? My understanding is that what the form says is you have to be a resident of Arizona. And then that form has to be signed at least 29 days before the election date. But it doesn't say under penalty of perjury, I have been a resident of Arizona for at least 29 days before the election. And so there's a gap there. And there's no way of curing that gap because the forms hadn't been updated before Judge Logan put his injunction in place. Well, so Mr. Weinhofer, I think my question is actually just a little bit different because my question goes to 16120. It goes to the question of who is eligible to vote. So I'm gonna assume that most of the people, it will be awful for Arizona  but that most of the people who've registered in the last week have been residents of Arizona and satisfy the residency requirement for purpose of registering for an election. The problem is that they didn't register in time to vote in this election and therefore are not eligible in this election. It's wonderful that the groups went out and registered a whole bunch more people. They're gonna do their civic duty and they're eligible to vote in future elections. They're not eligible to vote in November, 2020. What do we do about that state law? And can those numbers, can the county recorders identify who registered after the statutory deadline? The county recorders can identify them if not perfectly, then close to perfectly. And the reason for that is, first of all, I don't wanna turn myself into an expert witness here on how the voter registration records work but I can speak to them with, take this for what it's worth. When you request a copy of the voter file in Arizona, one of the columns in that file is the date of registration. You get that from every county, including from the Secretary of State, Hava. First of all, is it true? I know the Jays and the Attorney General have acceded to the notion that you should not be going back to check out the people who already registered. Have you, has your client also acceded to that? We have not. I thought there was a representation that you did. There was a representation in the Secretary of State's brief that you indicated a prospective state was all right with you. Is that wrong? So I think that the footnote in her brief accurately characterizes our conversation. The discussion that we had was essentially this. If the court were to issue a state tonight, our clients would not, I've confirmed with each of them, would not go back and challenge those words retroactively because we're thinking of this sort of as a settlement negotiation between the parties. And that's why I'm a little bit hesitant to get too hard into details. I'm happy to answer your questions about it, but I don't know how far you want to be trying to get into the details of this conversation. So as a practical matter, we would not go back and challenge those. I do believe because of the residency issue, they may be challengeable. But that's assuming a state were to issue tonight. If it were to issue, let's say, the day before, it would, the injunction would expire on its own terms. That's sort of a different thing, right? The stakes are higher and I don't know what our clients would do. I'm not testing for an answer. I'm not willing to hold that. Is there, we have actually asked our mediators to be on standby in case you guys, right after this, wanna go talk to the mediators. You see, you can ask- The mediator is listening to this argument. I'm sorry, what? I said the mediator is listening to this argument. Yes. So the question is, is there any interest in trying, well, I'd like all of you, before you're finished, to tell me whether it is worth at least a phone call with the mediators right after this argument to see whether you can actually come to a sentence. Nathan. Our view is that the order below was incorrect on the law and it should not have issued and should be stayed here. I think that we would be happy to consider some possibility here, but I don't think that should happen to prejudice the sort of speedy resolution of this application. It has already been a week since it went into place. And in our view, that's sort of an unsustainable path. I'd like to- One more question. I mean, so in the end, your position on the people who already registered is rather murky. I don't quite get it, but more specifically, can, yes, it would be possible to do this. It would also be possible to simultaneously put together the voter registration rolls and register more people, but you vigorously have taken the position that that is an undue burden on the state. And I have a question about whether you get to make that representation because you're not the state, but leaving that aside, but Minnesota does represent the state in some sense. So there seems to me something of a contradiction between, and maybe this is why you're not taking the position. Yeah, it could be done, but it would be at the expense of doing other things, i.e. figure out who has registered later. I'm sorry, I'm not sure I understand the question. Well, the question is, in terms of the practicality of going back and finding the people who registered over this period pursuant to a then valid court order, you haven't really, you seem to be saying, well, they're not valid, but we're not gonna challenge them, but they're not valid. And I don't know what that means. Is somebody else gonna challenge them? Or exactly what? But in terms of how we structure an order, although it may be as described possible to find these people and bar them from voting, it's not gonna be easy, is that accurate? I.e. for the same reasons that you and the state and the Secretary of State are going through the difficulties of doing two things at once, this would require doing two things at once. I don't believe it would be difficult to identify those individuals, but this question illustrates precisely why the county recorders are necessary parties here. No one on this call is responsible for registering these voters and tracking those records. It is not the Secretary's duty. She's not the keeper of those records. We're not the keeper of those records. I have an understanding of it from my practice, and I can tell you what that is, but questions like this, acts like this that need to be developed in the record were not possible because they filed this lawsuit three days before the statutory deadline pass without the necessary parties. And the day after the lawsuit was filed, Judge Logan understandably held a conference like this and said, we need to move very quickly. Everyone get me merits briefs tomorrow. So you had 24 hours to prepare and submit all your facts about the necessary parties. That is not the way election litigation should work because of Purcell. I see that I've expired my time. I'm happy to continue. We've taken you to your limit. We will give you two a chance to rebut. Thank you, Your Honor. Next, we will hear from Mr. Henson from the Attorney General's office. And it's clear that Ms. Desai is representing the Secretary of State. It's not entirely clear to me who you're representing, whether you can represent simultaneously the Attorney General, excuse me, represent the Secretary of State or something else. And you may wish to clarify that, but Mr. Henson, to you. Certainly, Your Honor. May it please the court, Drew Henson on behalf of Proposed Intervenors, the state of Arizona. I would like to reserve two minutes for rebuttal. I wish you luck. Thank you, Your Honor. To answer to your question initially, Arizona statutory law is very clear on who gets to represent the state of Arizona in federal court. And it provides the Attorney General with authority to, quote, represent the state in any action in a federal court. This isn't an action in a federal court, and we therefore have authority to represent the state. That's ARS 41. You have authority to represent one client and then switch and represent a different client? I thought it was really strange. And if you do that, I don't see how you can take a position that is contrary to the one that Ms. Thompson is now taking, because you're then in the same litigation opposing your former client. Your Honor, I don't want to get too far into the weeds on this, but the Secretary was previously represented with a different team and a different division of the Attorney General's Office. After the Attorney General decided not to appeal, there was a conflict declared. The Attorney General's Office no longer represents the Secretary of State in this matter. Well, I'm going to say, because you're a law firm, you couldn't do that. And it don't count. I'm not sure that's correct, Your Honor. Certainly, we have both ethics walls in place, and personally, I have not represented the Secretary in this matter. I have no inside information or confidential communications with her. This is an arrangement that, unfortunately, has become awfully common this year, where different teams have represented the Secretary. The Secretary has declined for whatever reason. I don't know if this is the case you're getting into, but I do think that there are real problems. Certainly, Your Honor, our ethics lawyers are comfortable with this arrangement, and I don't want to belabor this argument too much with we represent the state of Arizona. The Attorney General clearly has authority to do so. Let me ask you another question. You represent the state of Arizona. Had the state of Arizona... The plaintiffs didn't sue the state of Arizona, because if they did sue the state of Arizona, the state of Arizona would have claimed sovereign immunity, right? That is typically correct, Your Honor, that the state certainly has sovereign immunity and typically would not waive it. Right. So now you show up and you say, we're the state of Arizona, even though you couldn't have been. It seems like a two-way, one-way ratchet, that they can't sue you, but you can come in and say, now we're a party in the case, even though you couldn't sue us. Well, Your Honor, a couple of things on that. First of all, they could have sued the state of Arizona and if the state had waived its sovereign immunity, it could have been hard. It typically hasn't, right? Well, Your Honor, I think this is why 28 U.S.C. 2403 and Federal Rule of Civil Procedure 5.1 specifically exist, so that the state can come in when an otherwise inadequate defense of its laws is being offered, and so that it can come in and fulsomely defend its laws. And that's exactly what the state is doing. But that doesn't make you a party, essentially. Well, our intervention certainly- The thing about that is that the federal statute does not make you a proper party or give you a standing as such. It does not of its own accord, but certainly Abbott makes clear that we have standing anytime you enjoin one of our election laws. And Rule 24 gives us the authority,  to intervene if we meet the requirements. And notably, in opposition to intervention, they have not challenged any of the four requirements for intervention as of right, or any of the requirements for permissive intervention, or asked this court to have a negative exercise of discretion as a permissive intervention. So given all those factors, we think the state's intervention is appropriate here, and therefore we should be allowed to proceed and defend our law. But who is the state? Is it Nixon? Is it the Attorney General, or the Secretary of State, or maybe it's the Governor? And it's relevant here to the question of whether there is some accommodation that either has been or could be reached. And in, for example, with regard to the parties that are people who have already registered, somebody has to be able to speak for the state, for the relevant officials, and decide whether you're gonna agree to that. And we have judged by these questions whether you can agree to that. But I gather you have agreed to that, on behalf of somebody. Your Honor, the State of Arizona is a distinct legal entity that is capable of litigating for itself. The Arizona statutory law gives the Attorney General the authority to represent it. For example, we recently filed an original action against California as the State of Arizona versus the State of California. Those are very different suits, as you're well aware. Could you answer the question that was part of Judge Berzon's question, and that is your position with respect to if a stay were to be granted, your position with respect to a prospective stay. In the papers you filed with us, you indicated to the extent you have a client, your client is willing to agree to a prospective stay. Is that correct? That's correct, Your Honor. We agree that if this court issues a stay, it should be limited in scope so that it's prospective in its nature, and those that have registered before the time the state takes effect should be allowed to vote in this general election. Certainly, that's a sort of rough justice, but that is unfortunately the situation we're in given the district court's clear Purcell violation. How do you respond to Judge Bybee's point that this may not, in fact, be voters entitled to vote under state law? Your Honor, Judge Bybee is entirely correct. Unfortunately, we are in a situation where the federal district court has found that that was unconstitutional. That's incorrect, but the chaos and inequities that may be occasioned by a complete stay are ones that we think are inappropriate, and therefore ask for a more limited stay that's prospective in nature. That's notably exactly what the Supreme Court recently did in Andino, and that position commanded seven of nine justices. We recommend- Does that case involve eligibility to vote? It did not involve eligibility to vote in general. It involved whether or not particular ballots were valid. Right. This involves who's qualified to vote. This goes to the question of how big is the denominator in Arizona for the next election? That's a pretty fundamental question. Your Honor, we certainly have no disagreement. This injunction should never have issued, and therefore, none of this should be presented. Given the unfortunate facts we have here, which is, by the way, why Purcell strongly recommends that and prohibits injunctions like this, but nonetheless, we are in a distinctly- Purcell is completely blown out of proportion. Maybe this is the only Purcell case in the world, but what Purcell was really about was the fact that the Court of Appeals did act quickly, but it shouldn't have acted as quickly as it did. That's really, it's completely been misguided and misunderstood, in my view, having read it carefully now many times. But- If I can just- I have a question. Do you have a position on the rest of the Secretary of State's proposal, which is that there be a grace period? In fact, I guess there was an ameno. She suggests on Friday, maybe something else, but that there be something, because people are being told and have been told that they have until a 23rd grace period. Your Honor, we think a stay should take effect immediately. This has already gone on too long. There's not much indication that many of these are gonna be, these registrations are gonna be in the mail. I think the vast majority of them are gonna be online anyway, and therefore, we think a stay should take effect immediately, that a grace period is not necessary, and that if you introduce a sort of postmark concept, that's actually just going to introduce more chaos and complexity than it's worth. So if it's mail, if it's already in the mail, it's not gonna count, either? We don't believe so, Your Honor. Certainly, that introduces complexity into a situation that is already far too complex and too confusing, and the level of chaos is simply not worth the benefit that would be had. And in terms of the Purcell question, too, I'd like to direct this Court to the Seventh Circuit's decision in Bostleman, which was recently- I know, but it doesn't say that. So that's why I don't say that. Go ahead. Well, certainly, Your Honor, I think, you know, Bostleman issued a stay in circumstances very similar here, and all of the relevant differences militate further in favor of a stay here. Notably, the injunction in Bostleman was issued on September 21st, which is almost twice as much time before the election as the October 5th injunction issued here. Moreover, the extension of time in Bostleman was far more- If there was a statute that said no black people can vote, and somebody came in 10 days before the election to complain about that, you'd say, no, you can't do it because it's Purcell? Your Honor, that would certainly be- That's right. Your Honor, that would certainly be an egregious circumstance, but if that statute had been there 100 years and enforced that entire time, and suddenly someone showed up before the election, I think Purcell does not have an exception for such circumstances, as ludicrous as those would be. But obviously, that sort of egregious violation would cry out for an action as soon as the statute was enacted. There's no reason that you would wait, for example, six months into a pandemic to challenge Arizona's registration deadline, which was well-noted- There's other reasons up to a point, right? Because they had to wait until at least the circumstances that were making it extremely difficult to register were fulfilled. I understand you say it wasn't so difficult, but their numbers suggest otherwise. And the fact is that even if they could sit outside of the supermarkets in May and June and July, when Arizona was having real difficulties, or particular difficulties, they could sit there, but other people weren't gonna talk to them. So it didn't happen. And so I understand there's more of a problem about why they waited until, through most of the month of September. That's a different question. But six months doesn't seem to be the right- Certainly, Your Honor, that makes it far more extreme. But I can tell you from personal experience, we got hit with a number of lawsuits in late March and early April dealing with coronavirus. They dealt, for example, with signatures on initiative petitions that were due in July. Certainly, those people, which faced very similar burdens to those here, recognized coronavirus was an issue back in March or early April and probably filed suit there. This delay of all the way till September 30th is both inexplicable and unjustifiable. And it's precisely why the district court should have denied our release here. Okay, again, we've taken you over time and we will treat you the same as the others. We will give you a chance to rebut. Wait, can I ask one more question? I'm sorry, just- I just wanna ask- Oh, please, if you've got further questions, please go ahead. I just wanted to ask my mediator a question. Do you think there is any point in immediately after this argument having a phone call with our mediator? Your Honor, I have not specifically run that up the chain, so I can't speak with authority for the office. I can tell you in general, certainly our policy is defend state law fulsomely. So I have my doubts, but I do not have the official position or authority to weigh in on that. Thank you. Mr. Brinkerhoff. Good afternoon. May it please the court. My name is Matthew Brinkerhoff. I represent Mi Familia Vota, the Arizona Coalition for Change and Mr. Ulysses Ventura, plaintiff and now officially at the lease in this appeal. I first wanna address some of the issues that were raised, primarily, I believe by Judge Bybee concerning some of the statutes concerning registration, residency requirements, citizenship, and things of that sort. And I want you to be aware that on the day that anyone votes in Arizona, they are required to present proof of citizenship and residency. So in so far as they have already attested to that in their voter registration that they've filled out, whether before or after the extended deadline from the district court's order, this gets checked again in each and every case. And in so far... Mr. Brinkerhoff, I appreciate that. My concern is less sort of a voter fraud problem that is somebody who's voting who's not been a resident of Arizona for 30 days. It's really a concern that 1620 makes it a condition of voting that you must have registered before midnight, 29 days before the election. And it is in the section titled eligibility to vote. So assume that everybody who has registered in the last five days or seven days in Arizona is otherwise qualified to vote at the election. They're just simply too late on their registration. No, why don't we enforce 16120 as written? And the reason this court shouldn't enforce 16120 as written is the same reason that the district judge decided not to enforce 16120 as written and issued the injunction that is now here on appeal and subject to this motion for a stay. Mr. Brinkerhoff, if we disagree with the district judge on that point, then what? That is to say, if we do not agree with the district judge and ourselves would not hold that the constitution requires that the registration deadline be extended, then what? Well, then you still have to evaluate the extent and the impact of your order based on equitable principles. This is an equitable motion. It's equitable relief. This court and this panel is being asked to grant a stay, which is another form of equitable jurisdiction. And the question- Can equity get around a clear statutory statement that these voters are ineligible under state law? Well, I think it clearly can if you recognize, which no one can dispute, that for the last seven days, people have been registering to vote based on the reliance of an extant federal court order saying that they are eligible to register to vote and will be eligible to vote on November 3rd. And because that's been in place and people have relied on that, registered and are intending to vote and may indeed already, depending on who they are, be subject to early voting, which you can also participate in if you sign up and present the same kinds of proof of citizenship. Then the question is, should this- Go ahead. Early voting has started? No. Early voting has started, yes. Has started. So in other words, some of these people may have already gone to vote. It's entirely possible. But the question for this court, I think, sitting in equity, is given those facts on the ground, should this court be in the business of disenfranchising those people who registered based on a reliance of that opinion, which you won't be surprised to hear, I think is both fully supported by the record and constitutes a great amount of judgment and discretion on the district court's- Briefly, give me what you think are the strongest arguments as to why, on the merits, whoever the defendant is, the moving target is that who the defendant is, has a likelihood, a strong likelihood of succeeding now with regard to the emergency state. Doesn't. You want to say they don't. So in fewer sentences, as you can say, could you tell me why? I'll try my best. In order to prevail on appeal, and certainly to show that they have a strong likelihood of success, they have to show that the district judge abused his discretion, that he applied a law that was incorrect, which he clearly didn't. He applied the Anderson verdict balancing factors, that he somehow interpreted the facts when it comes to that law in a way that was an abuse of discretion. And it's really notable and important, and it's something that I very much want to stress here, that although in the district court, and now in the most recent filing by the Secretary of State yesterday, there are discussions about what might happen, and what could happen, and what might happen. Let me take you back to your premise. Why is the Anderson verdict the appropriate test here? You alleged in your complaint, and your complaint was very carefully written. You didn't overargue your client's position. You based it on the First Amendment right to speak, and the First Amendment right to associate. Those were rights to approach people, and talk with them, and encourage them to register. You don't represent potential voters. You only represent people who would like to register those potential voters. So why is Anderson verdict even the appropriate test? Why isn't this just a straight up First Amendment question? Well, it's an appropriate test in the context of that registration cutoff. No one- Does not affect your client. Your client's interest are in registering voters. They may register on October 6th. They just can't vote in the next election. They can register on October 7th, or 8th, or 9th, any day of the year they want to. But the Arizona rules determine when they are eligible, which election they're eligible to vote in. Your client can do this 24-7. There's no restrictions in Arizona on you registering people, and that was the argument that you made, and again, I think you made it very carefully in your complaint. You're right that that is the conduct that is the First Amendment conduct that's at issue, but you can't divorce it from the temporal sort of time in which it all occurs. The reason there's so much voter registration activity is because there's a push to engage people, to engage citizens, to promote civic engagement with them so that they actually participate and vote in elections, and most specifically in the election that's upcoming, which most people in the country, I think, all agree is election of profound importance. All elections are, but this is a particularly important one given everything that's happening in the country and the world, and my client's interest was not just in speaking to people, although that's a part of it. It is in encouraging them and securing them and getting them to agree to register to vote and to do so at a point in time when it will be most meaningful, which is this election. It's not the same interest of the organizations if they're encouraging people to register people to vote for two years from now. Your client does have an interest, and the deadlines are obvious to everybody, and the importance of the deadlines are obvious to everybody. I'm not disputing that, but in terms of being restricted in your ability to register people, there's no state action there. There's no state action in any of this. There's nothing that Arizona has done, at least nothing that you've alleged, that impeded your ability to register people. COVID was a general restriction on everybody's activities, but there was nothing that singled out your client or anything that your client was interested in. But there's a couple of things to unpack there. One, there were obviously restrictions and laws that were passed, the executive orders and the like from the governor that did have an impact on our ability to engage people that were separate and apart from COVID. But there's no question, just like if there's a natural disaster, if you look at the Florida cases for hurricanes or what have you, that when there's a lot of voter registration activity going on and suddenly something comes in to stop it, the state action itself, the activity that we are challenging is the strict enforcement of the voter registration and eligibility cutoffs. And it's those cutoffs- What orders did the governor issued that restricted your client over the last six or seven months? Having to wear a mask? Well, no, but there were restrictions on gatherings of more than a certain number of people. There were restrictions on how close- Did you allege that there was any restriction on your ability to gather in your complaint? I didn't see it. No, what we alleged was that our ability to engage people in this activity- I'm gonna ask you a very specific question. Did you allege in your complaint that the state had forbidden you from meeting in groups larger than whatever it was, 15, 50, 250 at any point during this? And when you say you, you mean my client. Your client. Forbidden my client. Did your complaint specify, did it allege that you were forbidden from meeting in large groups as a result of the state's action? We allege, not that we were forbidden in a specific sense that it was targeted at us, but it was certainly true. And it's alleged in the complaint that all citizens in Arizona were forbidden from gathering- You're avoiding my question. I appreciate- I'm trying not to, I'm sorry. I really, it's not intentional. Did you allege any crime in which you wished to meet with more than 50 people in Arizona and that Arizona law forbade you from doing it? And you can tell us what those dates were. Did you allege anything like that in your complaint? I did not. I do not believe so with the kind of particularity that you just set forth. I don't recall, counsel, you even mentioning restrictions on the number of people gathered. I mean, I can go back and check and we can submit a Rule 28J letter to try to clear this up. It's a little hard for me because of the video and everything else to be able to go looking through the complaint right now to find that. But I'm pretty confident that there are allegations in the complaint that at least discuss, particularly for standing purposes- There has been some focus in these briefs with the fact that there was an exclusion for personal activities and so on, but it's a practical problem as I understand it. I mean, that is that people, if your task is to approach people, engage them, discuss with them and try to persuade them to vote and people are either because they're being ordered to or because they're being prudent, not stopping, have every reason not to stop to talk to strangers at a close distance in front of the supermarket, which is about the only place you can find them. There is a, it's like the hurricane in Florida essentially. I mean, you don't have a statute necessarily telling people that they can't go out during the hurricane, but they don't go out during the hurricane and their houses are being destroyed and they're looking at other things. They're not paying attention to registration. So the notion is that any law is to be judged against the circumstances that, the background circumstances in which it's being applied. And that's why I understand you saying it doesn't depend on a statute telling you that you couldn't do it. It depends on practicalities as to whether you actually could do it. Correct. And I don't think anyone will be surprised to hear that I agree with that fully. I will also add though, Judge Bidey, that I've been told because I have some communication ability here that that allegation is made in the complaint. And if possible, I'd like leave to submit something in writing a 28 J letter perhaps, or I don't know what it would be called. That seems the easiest vehicle after the argument to point out specifically where in the complaint that is. So I can answer your question directly. But- You really did. I mean, despite my belief that Purcell doesn't say anything like what's being said today, you really put pressure on this situation by not coming in until September 30. Even by your own account, you should have been able to come in late August or early September. And it's really inexplicable why everybody's been coming in. Well, let me just explain that if we had tried to file this in early September or late August, we would not yet have had the data to show that because of the relaxation of the restrictions and because- I know that's what you say. There must be more to the story than that because you haven't gotten any information. And you really put everybody in a really bad situation. But if it had continued the way it had been up until mid to late August, there would have been very little relief that the court could have granted because it's as if the hurricane never stopped. What is the point? Do you really have a controversy to go into court on and say, we want to extend the registration up until the time the hurricane ends? That doesn't do anybody any good. Here, it was only when the restrictions were lifted and we were able to- It's not over yet. I don't know what the numbers are in Arizona, but the numbers are going back up again in many places. Right, and that could potentially further restrict things. The one thing I really would like to just emphasize, however, is the district judge looked at the- Obviously, Anderson-Burdick, we think, is the correct test. And in looking at that test and balancing both the burden on our associational and First Amendment rights of all my clients against extending the voter registration deadline, the only thing that the state pointed to that was substantive in any real way below was this issue about the early voter registration. It's detailed in Judge Logan's opinion. And he addressed that specifically and modified the injunction. I think that's a clear indication of how careful he was being in ruling on this issue. And I think it's been borne out. Just hear me out for one second by what's happened for the last week. There is nothing in any submission to this court that shows anything that's happened in the last week that's been chaotic, disruptive, problematic. Everything that they're raising is the same things that they raised in the district court that are notional. They're speculative. They're not based on any real record. Only record that we have of what's happened since the injunction was issued is that 15,000 approximately people registered on the first day after the extension. And as far as we know, that kind of registration has continued to pace. And just as citizens and members of the bar, we should want that. That is a good thing. People participating in civic government and holding their elected officials accountable through voting is something that our democracy is about. There's been nothing that's happened. And China isn't sort of a motherhood and apple pie argument. Of course, it's a good thing, but we've got a problem. And that is there is or was a statutory deadline which absent COVID was perfectly valid. And I'm not sure the presence of COVID makes it invalid. And, you know, all I can say is if you look at the record that we submitted below, all of the declarations, the numbers are stark. After COVID began in March, our registration were reduced by over 90% across the board. And they only started to tick up later. And, but for COVID and the restrictions that were put in place, there would have been tens of thousands of Arizonans who had been registered to vote during this period. And you have to set that against a registration deadline that serves no particular compelling, you know, interest of the state, much less a compelling one. I mean, a registration deadline. I'm really trying to get a word of that right here. So thank you. And then we'd like to talk about that. The secretary now said, and I don't, well, maybe this was said in passing, that there is a deadline, another deadline for putting together the voter roll. And that deadline is today, I think October 24th. They're supposed to start putting together the voter rolls. Is that accurate? Or present the voter rolls. Actually present final voter rolls. Well, that's the key. I do not believe that it's correct that they are final. They are supposed to present them. The vast majority of the voter rolls in Arizona are electronic. They are updated regularly. The state laws provide for those rules to be updated. It is not as if, just to be clear, that the voter rolls are fixed in time as of the 24th of October. That's just not true. There are many, many exceptions to that, and they are updated electronically, and they have absolutely the capacity and capability of even updating the paper ones in the handful of places where they are still using paper voter rolls, basically. So again, this is something that they've raised, along with a number of other things, but almost everything that they've raised really just goes to how much work it's going to be to both administer the election in other respects and also process voter registration. And the only evidence we have about there really being a burden there is what's on the county Maricopa County website, which was very clear that they are continuing to process registrations. They announced the ruling of the court. They made no attempt to say there was any problem or issue and, in fact, just encouraged everyone to participate, and that's over 60% of the state in that one county, who notably, of course, didn't join the amicus brief with the governor either. So the vast majority- Yes, maybe that's true in Maricopa County, but there are all these quite small counties that have two and three people in the close office, and they're not going to be able to do it. I understand that that is what the secretary has said, but she also decided about a week ago today, give or take, that she could live with the extension to the 23rd, that it was the better course for the administration of the election process in Arizona to not appeal and to allow the extension to go into effect and to not challenge it at all, which it was her authority to do that. I recognize that she's changed her mind. In this circumstance, given the timelines, I don't challenge her right to change her mind, but it is notable that the secretary's considered judgment a week ago was that this could be done, and her explanation for filing a notice of appeal today is that she's now decided that it's more problematic than she thought, but everything that she raises that's problematic has no tie or tether to anything that's empirical or reality-based. It's, again, the same kind of speculation. I mean, the reality is that with or without the injunction, as I think Judge Bivey has pointed out, the defendants are still going to process voter registration. There's nothing that stops the processing of registration. The question is, can they process them, and will the people who register during this period be eligible to vote? And on that question, the answer has got to be that, of course, they have to be eligible to vote. There's no basis for saying they're not eligible to vote. At least, when you wait- Other than state law. Other than a statute, you're right, but it is the nature of our claim that we're saying that the Constitution compels this. I recognize that you disagree with that, but that doesn't mean that the state statute controls if we're right on the Constitution. Arizona's 29-day registration is not just pulled out of thin air. That's within the 30-day state barber that Congress created in the National Voter Registration Act of 1993. Congress ordained a 30-day period. The Supreme Court has previously approved a 50-day period as constitutional. So, Congress chose something smaller. Arizona gave back to its voters one additional day. And what right do we have now to come and say, contrary to what Arizona did when it thought it was following federal law, it now has to do something else? Right, there's no question that we're not challenging the registration deadline facially. There's also no question that 40% of all states have same-day registration at this point, but Arizona is entitled to make its decision. The problem is that the decision it made, which it's entitled to do, which is facially valid and constitutional, we don't challenge this in any way on a facial ground, in this year of all years with a 100-year pandemic and all of the impacts that it's had, it has worked to be a serious and undue burden on my client's First Amendment rights. And although I don't represent others, it's true. It's also undeniably true many other people's First Amendment rights. And that ought to be concerning to all of us and certainly to this court. And that is the basis always of a federal court to intervene, to protect those constitutional rights and to where it makes sense and it's equitable and where there's really no showing of there being chaos or unfeasibility. So let's just be clear that the district court was spot on on his ruling about how feasible or unfeasible this was. All that- Why would this be the same argument in four years without COVID? The deadlines are always arbitrary. That's just the nature of deadlines. Understood. Why do the federal courts get to improve the Arizona election code? Well, for the same reason that events occur from time to time, whether it's a hurricane, whether it's 9-11, which occurred, I'm in New York on election day. And did we strictly construe the law and not allow anyone who didn't manage to vote that day to have their vote counted? No, of course we didn't. We responded to that. And sometimes, and hopefully the people who respond to that are the elections officials and the elected representatives of the state. But if that doesn't happen, that's exactly why we have Article III of the Constitution. It's exactly why, not to state the obvious, that we are here today and this court exists in large part is to make sure that when that happens, there is a place for redress for my clients and all other people who are similarly situated. There's nothing unusual about that. And all that's happening is that an event occurred extreme and unpredictable circumstance, and it has had this profound impact in many aspects of everyone's lives. This is just one of them, but it's one where this court can sit in equity and make it right and restore the rights of my clients and certainly not disenfranchise the people who've already registered to vote. That would be a travesty. What is your client's position on Secretary Hobbs' current proposal that there be a so-called prospective stay with a grace period? And let's say the grace period was until Friday. Would you go along with that? Essentially be losing a week, but on the other hand, you'd have four days to rev up whatever activity you have and get it done. I understand. Let me say, I guess, two things to that. One, insofar as the court were to determine that a stay would be granted, we certainly agree with the Secretary of State that there ought to be a grace period and that to do otherwise will just cut people off in a way. I mean, it's been announced now for a long time. It's the 23rd. Getting a number of days would allow that to sort of- Well, not that long a time, one week. What's that? Not that long a time, one week. No, we're all in a very compressed timeframe. It's true. I mean, I'm not saying it's, but it has been out there for a week and it's widely known. I don't think it's an accident that there were 15,000 registrations made the day after the injunction was granted. That was far more than on any other day. People were told, either you told them or the Secretary of State told them or somebody told them, you better hurry up because it could be safe. So a lot of people hurried up and that could happen again, for sure, if you may have two days or three days or four days. I understand, but there's a difference. When the district court issued its order, it extended something that could be done immediately and was only beneficial to, obviously, my clients' rights and others who might be interested in exercising the franchise on November 3rd and registering to vote. So there didn't need to be any time to acclimate people to what was happening. It was something that is obviously promoting people's rights. If that's going to now be curbed and we could go back in some fashion, and again, I would urge the court not to do that for many of the reasons that are detailed in our briefing, I've been trying to explain here in this argument, but if that were to happen, I think it would be a good exercise of the court's equitable powers here to make sure that it's done in the least disruptive way possible, which would be to grant a number of days for people to learn of the change and to act accordingly so that people are not denied their right to vote in this upcoming election on November 3rd. And the second answer to your question is, I always, and I know that my clients are always willing to have discussions and are willing to continue discussions after this argument today about ways to resolve things without resorting to receiving a court order. Another point that I wanted to make, sorry, is the Purcell point. There's no question, and I think it's laid out pretty well, actually, in the Seventh Circuit opinion by the dissenting judge in that case, Rebson, I think, or Reb, may have gotten that wrong. Purcell was a caution, an advice to courts of appeals. It is not a doctrine. It is not a presumption. And it doesn't apply here because unlike even in the case just this past week by a panel of this court,  was one that affected a person's eligibility specifically to vote and to cure a defect of not signing something. Here, all that's happening is that we're extending something that already happens, which is that the recorders and the Secretary of State register people to vote. And we're doing it in a way that allows my clients and others to exercise to their fullest extent in the way that they had intended absent the pandemic, their First Amendment rights. So it doesn't cause the kinds of disruption. Of course, it's a good idea to always be cautious about issuing an injunction that affects elections. But every case is different and has to be taken on its own facts and circumstances. And here, the kind of disruption that the defendants are writ large for the parties on appeal, the appellants, are talking about, they have no empirical evidence that have shown that any of that even exists. And so under the circumstances and properly understanding what Purcell really says, as opposed to what it seems to be morphing into, at least in people's briefings who are resisting these kinds of changes to the election processes, I think it's quite clear that Purcell doesn't apply in that sense or for that reason. I'm happy to answer any other questions that you may have, but I see that my time is running. Yep, yep, 10 seconds. Thank you very much. Thank you very much, Mr. Brinkman. Let's go through the other counsel in order. Would you please put one minute on the clock for Ms. Desai? Thank you, Your Honor. I have just three brief points that I'd like to make. First of all, the plaintiffs talk about there being only speculative harm and no information on the record about the harm. This is simply just, it's not true. We talked about the harms with the district court, but I think more importantly, I'd like to note sort of the catch-22. It's not possible to tell, it was not possible to tell the district court, and it's not possible to tell this court all of the impacts that are going to occur. I think you probably persuaded us of various difficulties, but I've got a separate point, and that's really Judge Bybee's point. What is your client's view as to whether or not extending this deadline past the 29th or to reduce the deadline to less than 29th in the circumstances of this case is a violation of state law? Your Honor, I looked at 16120 while the other lawyers were arguing, and I guess I'm not entirely in agreement with Judge Bybee's view because 16120 is precisely the statute that Judge Logan enjoined for purposes of extending the deadline. In the order, and albeit it's not very clear, but at the very end of the order, where the court says that the descendant is preliminarily enjoined from enforcing the ARF 16120 October 5th voter registration cutoff, I think that it can be interpreted to mean that the eligibility requirement, all of 16120, that's the only statute that talks about the 29-day deadline, that is what's being enjoined. So if you admit it- But my question is, are you arguing that this, the circumstances, well, let me make the question more precise. Assume for purposes of my question that the enforcement of the deadline does not violate the Constitution, that is to say, take out from underneath Judge Logan's order, the premise for his order, does the secretary have, in the circumstances of this case, authority to waive the deadline? If there is an injunction in place, or if there is an order that states that people can register to vote past the 29-day deadline set forth in 16120, it is our position that those registered voters may vote under 16120, they're eligible to register, they're eligible to- Counsel, I don't think you answered Judge Fletcher's question, so let me, I wanna see if I can narrow it. Let's assume that the plaintiffs never filed their lawsuit. On September 15th, could the Secretary of State have announced that she would not enforce the October 5th deadline? Does she have authority under state law to waive that statute? No, Your Honor. Could the governor have done so? I asked a relevant question when the district court issued an order and said that they could register and vote if they registered, and you were required to do and should have done. We were not waiving this yourself, you were abiding by an injunction of the federal court. And having done that, and given the fact that the issuance of a stay in any event is a matter of discretion and equity for us, is your opinion as to whether we should unravel everything backwards, because it's not necessarily a binding on us, but it certainly was a fair amount. So in other words, you were operating, it's not that you're waiving the deadline, it's that you were ordered not to enforce the deadline. That's correct, Your Honor. There's been a change in circumstance that there was an order stating that that deadline was, and I understand, Judge, by these points, that if you take all of that away, it is not our position that the Secretary could, on her own, authorize to waive that deadline. But in light of the court's order indicating that individuals can register to vote past the October 5th deadline, for that period of time until a stay is entered, those people relied on that order, and it is an equitable release that then this court would be providing, which is to have the stay effective only prospectively. Yeah. What was that Rhode Island case not too long ago where the Supreme Court relied on the fact that the responsible officials proceeded to the injunction? So it appears that you can proceed to it in general or in pieces, and that's what you're there for, really. And how would this be any different than the Rhode Island case where all four prior extensions relying on the Rhode Island case as opposed to saying you can do that? Well, it wouldn't be any different, and frankly, it wouldn't be any different than the South Carolina case that said that there was a grace period or a prospective order for ballots that came in later, two days later. So I think that it is better if the parties can agree and stipulate to an order, and it sounds, from my discussions with counsel, that that is, at least in hearing today, a possibility we would certainly be interested in speaking to a mediator about the same kind of stipulation. The last point that I will make, just to clarify a question that Judge Fletcher asked, there are really three deadlines, and the October 24th deadline is certainly important with respect to the rosters being finalized, and I just wanna clarify the point that the rosters are finalized and sent to the poll locations as well as the e-poll books are updated. It's not that registered voters can't be added to the list. It's that they may not appear on the roster or on the e-poll book, and this drives home really the point that I wanted to make, which is if a voter shows up at a poll and their name does not appear on a roster, the confusion and ultimate administrative burden for having that person have to file a provisional ballot because they will not get a regular ballot if their name is not on the roster will result in additional further work and time that the administrators have to spend. So in closing- The rosters are continually updated, is that not? Until the date of the election, is that not right? I'm sorry, Your Honor, I did not hear your question. One perhaps says that those rosters are continually updated until the date of the election. Is that not correct? The rosters in the back office are updated. The question is whether or not the individuals who are working at the polls have a roster that includes that person's name is really the question. It's not that that person isn't actually registered. It's that the poll worker doesn't know whether or not they're registered because they don't appear on the list. So they have to vote a provisional ballot. And the process for going through provisional ballots, as we all know, takes longer. And so that is one of the sort of administrative burdens of having to spend time processing hundreds, maybe thousands of provisional ballots. So in closing- I think we understand your position. Thank you very much. Okay, thank you. Mr. Langhofer, we're in the business of going past deadlines on this argument. Let's put two minutes on the clock, and that may be realistic. There we go, thank you, Your Honor. The truth is that campaigning in 2020 is difficult. It's more difficult than it has been in previous years, and that's true for everyone. And it's not because of the statutory deadline for registering. It's because of COVID. It's not state action at all. In fact, if you listen to- if you just think critically about the injury the plaintiffs claim they've suffered, it's not because there was a law that prohibited it. They've never said that the governor's executive order prohibited them from doing it. It's not because the state was rejecting property filled out and filed voter registration forms. That's not the case. It's not because you couldn't go into the field and get people to talk to you or sign your paperwork. The record shows ballot measure committees have done it with tremendous success, even after the onset of COVID, even after the lockdown orders, in fact. That was true in Arizona and elsewhere. And it's not because they can't, in fact, register voters. They can do that now. They could have done it even without the injunction. The question is just whether the people they register, people they don't have third parties standing to represent, can vote at the upcoming election. Their injury, therefore, is not traceable to state action. And it all predated the injunction. It's not traceable to state action in the sense that there's a statute which is precluding the people whom they are registering from voting and therefore impeding their attempt to get them to register and vote. Now, whether it's a ballot statute or an in-ballot statute is a different question, but there is certainly a state action. But there has to be a deadline for voting. Whether that deadline was on October 5th or October 23rd, there is a deadline. The expenditures that they're describing- Only the statute is judged against the background circumstances, right? I mean, if, for example, the statute said that you have to register online and 30% of the people don't have a computer, that would be a relevant consideration as to whether it was a valid statute to begin with, the background circumstances. So here we have background circumstances, which were the difficulty for a large part of the usual registration period for this election of communicating with people. And I mean, I don't think it's an answer to whether the statutes are valid or not given the circumstances, but it's not a reason why there's no state action. This lawsuit was filed too late. It was filed against the wrong parties and ultimately it alleges an injury that arises due to COVID and not the deadline. The injunction was wrong when it was issued and shouldn't be extended for one minute longer. Thank you, your honors. Okay, thank you very much. And finally, Mr. Hanson. Thank you, your honors. Three quick points. Let's put two minutes on the clock  There we are, okay. Three quick points, your honors. First of all, the district court distinguished Purcell and held it categorically inapplicable for a single reason. It relied on its decision in ADP versus Hobbs, which said Purcell does not apply at all where an injunction merely extends an existing state process. The very next day, this court issued a state pending appeal and a published decision and explained that Purcell very much does apply to those circumstances. So the district court's decision here rests on legal error and is likely to be reversed on appeal. Second, plaintiff's counsel expressly invoked Judge Rovner's dissent in the Seventh Circuit Fosselman decision, which merely underscores that this court would have to create a square circuit split in order to deny a stay here. Such a split would be entirely unwarranted and would be a very good reason why, you know, further review or further stay could be had. Finally, Judge Berzon, you expressed that the delay here is inexplicable. We absolutely agree, and that strongly supports issuing a state pending appeal here. Okay. I'm putting it next to Purcell and trying to find the supposed rule that everybody's relying on, and it isn't there, but that's okay. I don't know if this was late. I don't know if it was too late, but it was late. With the respect, then, the Seventh Circuit thinks it's a rule, and the fact that the Supreme Court keeps granting virtually every single one of these stays indicates that they think it is a rule of apiece. Now, of course, it's not a categorical rule. Another question. We never quite, I guess you did come to us with this question of whether you agree that the people who are already registered should be allowed to vote, and you said that you thought they should, and then the question was raised how, whether we could do that, and ultimately, our authority, our state authority is equitable authority, and we have discretion, as I understand it, to not grant a stay. Even if the conditions for it are there. Is that right? Certainly, equity is flexible and can be molded to the circumstances at hand. I don't believe it's the case that if the requirements for a stay are met, that there is discretion to withhold it entirely. I think my was just an opinion suggestion, and I understand it's kind of fuzzy, but yes, there is an opinion. At any event, thank you. Okay, thank all parties for their arguments in this very interesting case. We have a speaker on the line, Mr. Steven Licorious, of course. I'm not quite sure how this should be arranged, Steven, for you to contact the attorneys immediately following this argument to see if any mediation would be possible, and the mediation should be accomplished, of course, post haste, and then you contact the panel as to whether or not there are any prospects of very quick settlement of this case. Meanwhile, we'll take the case under submission and proceed with our decision, but please, all four of you, Mr. Licorious will contact you, and then this will please be available for that. We're now in adjournment. Thank you very much. Thank you. Thank you, Your Honors. This court for this session stands adjourned.
judges: W.fletcher, Berzon, Bybee